IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUKE A. PRINDABLE, #Y28834 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 22-cv-199-RJD |
| AUSTIN BECKER AND ORLANDUS BRIGGS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' Motion for Summary Judgment. Doc. 35. Plaintiff did not file a Response.[1] As explained further, Defendants' Motion is GRANTED.

**Background**

Plaintiff, formerly detained at the St. Clair County Jail in Belleville, Illinois from October 2020-February 2022, filed this lawsuit pursuant to 42 U.S.C. §1983. Doc. 11; Doc. 35-2. He alleged that on May 19, 2021, Defendant Briggs gave him a food tray with a chicken patty that tasted like "an overpowering amount of baking soda." Doc. 1, p. 8. After he ate one small bite of the patty, he had burns inside his mouth and throat. *Id*, p. 9. He believes that there was lye in the patty. *See id*.

On December 24, 2021, Defendant Briggs gave Plaintiff a breakfast tray. *Id*., p. 13. Plaintiff took a bite of his breakfast "and tasted something strange, then [] realized an overpowering odor of male genitals" and he vomited. *Id*. When Defendant Briggs retrieved the

---

[1] Defendants filed the Notice required for Motions for Summary Judgment in cases where the opposing party is pro se, informing Plaintiff of the consequences of failing to respond. Doc. 37.

tray, "he laughed" and then threatened Plaintiff when Plaintiff asked for a complaint form and a sergeant. *Id*. Defendant Briggs "reassured [Plaintiff] he wouldn't do it again if [Plaintiff] kept it to [himself]. *Id*., p. 13. Later that night, Plaintiff's "lips broke out with herpes sores and a rash." *Id*. Five days later, Defendant Becker gave Plaintiff his breakfast tray. *Id*., p. 14. When Plaintiff "realized the same overwhelming odor of male genitals on the spoon," he told Defendant Becker to get him a "sergeant and a complaint form." *Id*. Defendant Briggs appeared at Plaintiff's cell. *Id*. He and Defendant Becker "threatened [Plaintiff's] life over the issue." *Id*. Plaintiff thought both Defendants "smelled of alcohol" and their eyes were "red and glossy," and they were "almost belligerent while slurring their words." *Id*.

It is unclear whether Plaintiff was a pretrial detainee or if he was incarcerated. Doc. 11, p. 4. At all relevant times, Plaintiff was being held on a warrant for violating conditions of probation. Doc. 35, ¶4. If he was a pretrial detainee, the Fourteenth Amendment applies to his claim; the Eighth Amendment applies if he was incarcerated. Following this Court's threshold review pursuant to 28 U.S.C. §1915A, Plaintiff proceeds on the following claims:

> Count 1: Eighth or Fourteenth Amendment claim against Briggs for tampering with Plaintiff's food trays on May 19 and December 24, 2021, creating a risk to his health and safety.
>
> Count 2: Eighth or Fourteenth Amendment claim against Becker for tampering with Plaintiff's food tray on December 29, 2021, creating a risk to his health and safety.
>
> Count 3: First Amendment claim against Briggs and Becker for threatening Plaintiff with serious harm in an effort to deter him from exercising his First Amendment right or otherwise complaining about conditions of confinement.

Doc. 11.

### Plaintiff's Deposition Testimony

On May 19, 2021, Plaintiff received a food tray from Defendant Briggs. Doc. 35-1, p. 9. He took a small bite of chicken patty and tasted "an overwhelming amount of baking soda" and then a "it burned a hole in my mouth." *Id*. He believes that the food contained lye; he explained

that the reason he knows it was lye in his chicken patty is because he used to clean with lye. *Id*., p. 10.   He believes that this incident caused problems with his kidneys. *Id*., p. 9.   He does not remember if any healthcare provider told him that the lye caused issues with his kidneys. *Id*.

On the morning of December 24, 2021, Defendant Briggs handed Plaintiff his food tray. *Id*., p. 6.   Plaintiff took a bite of food from the tray and noticed "it smelled like someone's private parts."  He did not notice the smell until after he had taken a bite. *Id*.   Plaintiff was asked the following questions regarding why he attributed the smell to Defendant Briggs.

> Q: Okay. Now let me back up for a minute. My question is about anything that you have or believe or led to your belief that Officer Briggs had-we're going to say tampered with your food. Is there anything prior to-prior to noticing the overpowering odor that Officer Briggs had done that led you to believe that he had tampered with your food?
>
> A: Yeah. They were just extremely aggressive about it.
>
> Q: Okay.
>
> A: They just came-they threatened me. Laughed at me. And it was just real—one of those things it was just—really inappropriate stuff.
>
> Q: Okay.  I understand what you're saying is that you're testifying that Officer Briggs laughed at you when you reported it to him. Is that correct?
>
> A: That's correct.
>
> Q: And what did you report to him? Did you use the same terminology, "overpowering odor of genitals? Or, what did you tell him.
>
> A: I asked for a sergeant complaint form.  He said he wouldn't do it again if I kept it to myself.
>
> Q: Mr. Prindable, what did you tell him had occurred? Did you just say, hey, my food isn't good? Did you just say, hey, somebody—you know there's the smell of genitals on my food?  Did you say, hey, Briggs, did you mess with my food? What did you tell him?

Page 3 of 10

| | |
|---|---|
| A: | It should be right here in my statement. Said he was putting stuff in my food. |
| Q: | I'm sorry, sir? |
| A: | I'm reading. Hold on. So I asked to talk to a sergeant. And he reassured me he wouldn't do it again if I kept it to myself. And I believe Sergeant Green came and talked with me. Because I kept telling him that I wanted a sergeant. So eventually Sergeant Green came and talked to me. And I got a complaint form. Something along the lines of that is what happened. |
| Q: | What did Sergeant Green tell you? |
| A: | Told me complain about it on a complaint form. Take the appropriate actions. And if its beyond- goes beyond that, write a grievance. |
| Q: | Okay. So let me back up for just a minute. You said that Officer Briggs laughed at you when you first told him. Is that correct? |
| A: | That's correct. |
| Q: | Okay. What did you tell him that he laughed in response to? |
| A: | Let's see. What did he tell me or—can you repeat the question? |
| Q: | Certainly. What did you tell him? Did you say, hey, Briggs, I just want to see a sergeant? |
| A: | I told him about the issue. I made him aware of the problem. And after I'd thrown up, I made him aware of the problem. And I asked for a sergeant and a complaint form. Complaint form and sergeant. |

Id, p. 7.

Plaintiff received a tray from Defendant Becker on the morning of December 29, 2021. *Id*., p. 8. Plaintiff "took a bite with a spoon…then I realized the same overwhelming odor of male genitals on the spoon." *Id*. Plaintiff believes Defendant Briggs was responsible for the overwhelming odor of male genitals; when asked why he believed it was Briggs, he said "[j]ust—

it was the first time. And then the second time he came in there. And that's all I can the best of my knowledge that I could put together as who it would possibly be." *Id*. Plaintiff told Defendant Becker to get him a sergeant and a complaint form. *Id*. Defendants Becker and Briggs then entered his cell. *Id*. Plaintiff testified that they "told me, me complaining about the issue wouldn't be a problem if I was dead." *Id*., p. 7. Defendants Becker and Briggs were "really aggressive about it." *Id*. They smelled of alcohol and slurred their words. *Id*., p. 8. Plaintiff read from his Complaint as he gave this testimony. *Id*. Three weeks later, Plaintiff was "beaten up" by Defendant Briggs and another Defendant. *Id*., p. 8. That incident was the subject of a separate case involving an excessive force claim against Defendant Briggs. *Id*.

Plaintiff was asked repeatedly whether anyone told him that the herpes on his mouth were related to tampered food on his tray. *Id*., pp. 4, 5. He believes there was a "general understanding between" himself and an unidentified nurse that he had herpes because of tampered food. *Id*.

### Defendants' Affidavits

Both Defendant Briggs and Defendant Becker filed affidavits to support their Motion for Summary Judgment, stating that they recalled Plaintiff and that he had, on several occasions, verbally complained about the taste of his food. Doc. 35-4, ¶¶6, 10; Doc. 41, ¶¶7, 11. They specifically denied ever removing the cover of his food container and tampering with the food and/or utensils. Doc. 35-4, ¶¶4, 9; Doc. 41, ¶¶6, 10. Neither Defendant has any "information or knowledge that at any point anyone ever tampered with the food or utensils delivered to [Plaintiff]." Doc. 35-4, ¶11, 9; Doc. 41, ¶12.

Defendant Briggs recalls an incident on January 31, 2022 in which he "provided back-up" to another officer because Plaintiff was "refusing to comply with orders and refusing to attend a court appearance." Doc. 35-4, ¶15. None of the actions Defendant Briggs took that day were in retaliation for any of the allegations Plaintiff has made against Defendant Briggs in this suit.

Doc. 35-4, ¶21.

### Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *King v. Hendricks County Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). All evidence in the records and reasonable inferences are considered in the "light most favorable to the nonmoving party." *Id*. An inference is not reasonable if it is only supported by "speculation or conjecture." *Id*.

### Count 1

In Count I, Plaintiff alleges that Defendant Briggs tampered with his food on May 19 and December 24, 2021, creating a risk to his health and safety. It is unclear whether the Eighth Amendment or Fourteenth Amendment applies to Count 1 of Plaintiff's Complaint. Defendants argue that summary judgment should be granted under the Fourteenth Amendment standard, which imposes a higher standard on Defendants. *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018 (*quoting Kingsley v. Hendrickso*n, 576 U.S. 389, 400 (2015) ("pretrial detainees (unlike convicted prisoners) cannot be punished at all"). Accordingly, the Court will analyze Plaintiff's claims and the evidence under the 14th Amendment. In Count I, the issue is whether Defendant Briggs subjected Plaintiff to "objectively unreasonable" conditions of confinement. *Hardeman v. Curran*, 933 F.3d 816, 823-25 (7th Cir. 2019).

Plaintiff testified that his food on May 19 had a distinct taste and then "burned holes" in his mouth and throat. No evidence in the record reflects any injuries to Plaintiff's mouth or throat after the May 19 incident. Even if it did, no evidence indicates that Defendant Briggs was responsible for any additive to Plaintiff's food that caused injuries to his mouth or throat.

Defendant Briggs stated in his affidavit that he never tampered with any food or utensil on Plaintiff's food tray. None of the testimony given by Plaintiff at his deposition contradicts this

statement. Regarding the December 24, 2021 breakfast tray, Plaintiff described a smell "of someone's private parts" that emanated only after he took a bite of his food. Plaintiff was then asked repeatedly to explain why he believed Defendant Briggs had tampered with the food. Plaintiff testified that when he told Defendant Briggs "about the issue" and "the problem", Defendant Briggs laughed and assured Plaintiff "he would not do it again" if Plaintiff did not report him. This testimony does not create a genuine issue of material fact. Nor does the fact that Defendant Briggs brought Plaintiff his food tray create a genuine issue of material fact. Even if the Court were to construe Defendant Briggs' statement that he "would not do it again" as some type of admission (rather than something he said in jest, as indicated by his laugh), the record is silent as to what Defendant Briggs was admitting. Despite being asked multiple times, Plaintiff never testified what he told Defendant Briggs "about the issue" with his breakfast.

Regarding Plaintiff's belief that lye was in his chicken patty on May 19, 2021, and his description of the "overwhelming odor" on his spoon on December 29, 2021, no evidence in the record indicates that Defendant Briggs contaminated Plaintiff's food or spoon on either date. To conclude that Defendant Briggs did something "objectively unreasonable" to cause sores to Plaintiff's throat and mouth on May 19, 2021 or make Plaintiff's food emanate the "overwhelming odor" on December 29, 2021 based on Plaintiff's subjective taste and smell requires too many "leaps" and reliance on "metaphysical doubt" instead of "reasonable inferences." *King*, 954 F.3d at 986. Accordingly, summary judgment is granted in Defendant Briggs' favor on Count I.

**Count II**

In Count II, Plaintiff alleges that Defendant Becker tampered with Plaintiff's food tray on December 29, 2021, creating a risk to his health and safety. However, at his deposition, Plaintiff testified that he believes Defendant Briggs contaminated the spoon on his breakfast tray. Regardless, no evidence in the record refutes Defendant Becker's affidavit, denying that he ever tampered with Plaintiff's food or utensils. Summary judgment is therefore appropriate in favor

of Defendant Becker on Count II.

### Count III

To survive summary judgment on Count III, the record must reflect "a prima facie case of retaliation in violation of the First Amendment," which requires that Plaintiff show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take retaliatory action." *Whitfield v. Spiller*, 76 F. 4th 698, 707-08 (7th Cir. 2023). Filing grievances and/or complaints about conditions in jail are activities protected by the First Amendment. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal citations and quotations omitted).

The record is devoid, however, of evidence that Plaintiff suffered a deprivation that would likely deter future First Amendment activity. The standard is "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity. *Id.* (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). This is normally a question of fact but can be resolved on summary judgment if the "asserted injury is truly minimal." *Id*. (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

According to Plaintiff, when he stated that he would file a grievance or complaint about his food tray, Defendants threatened him by stating "complaining about the issue wouldn't be a problem if [he] was dead." Also according to Plaintiff, they appeared to be under the influence of alcohol. Threats of harm may, under certain circumstances, deter First Amendment activity. *Id*. at 649. In this case, however, the asserted deprivation that Plaintiff suffered-hearing a vague threat one time by two purportedly intoxicated Defendants-is "truly minimal" and therefore Plaintiff failed to make a prima facie case of First Amendment retaliation. *See Douglas*, 964 F.3d at 647; *Cf. Hughes v. Scott*, 816 F. 3d 955, 956 (7th Cir. 2016) (guards' alleged abuse of civilly committed person went "beyond simple verbal abuse" and therefore *would* deter a person of

ordinary firmness) *and Oliver v. Lyerla*, Case No. 17-cv-206-NJR, 2020 WL 4464429, *3 (S. D. Ill. Aug. 4, 2020) (collecting cases).

Regarding the physical altercation between Plaintiff and Defendant Briggs on January 31, 2022, nothing in the record suggests that it was motivated (even in part) by Plaintiff's grievances and/or complaints. Defendant Briggs explains the circumstances that led to his interaction with Plaintiff that day, and Plaintiff provides no evidence to refute Defendant's affidavit. The proximity in time (four weeks between Plaintiff's threat to file grievances and the physical altercation) is not sufficient for Plaintiff's claim to survive summary judgment. *Sweet v. Town of Bargersville,* 18 F. 4th 273, 279 (7th Cir. 2021). Accordingly, Defendants are entitled to summary judgment on Count III.

## Conclusion

Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment accordingly.

Defendants filed two Motions for Summary Judgment (Docs. 35 and 41); one contained redacted portions because Defendants referenced a note made by a medical provider regarding Plaintiff's condition. Doc. 35, p. 18. The Court did not consider that evidence relevant to the instant motion and therefore did not describe it in this Order, as it merely bolstered Defendants' arguments and had no effect on whether a genuine issue of material fact existed in Plaintiff's claims. Doc. 40, p. 18. In any event, Defendants filed both motions (the unredacted version and the redacted version) under seal. Only the unredacted version should be under seal. Accordingly, the Clerk of Court is directed to unseal the pleadings found at Doc. 35.

**IT IS SO ORDERED.**

**DATED: September 25, 2024**

*s/* *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**